# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 8, 2012

# IN RE: KAYLEIGH N.R.

**Appeal from the Juvenile Court for Davidson County**
**No. 136559     Betty K. Adams Green, Judge**

---

**No. M2011-02759-COA-R3-PT - Filed June 25, 2012**

---

Mother appeals the termination of her parental rights. The trial court found four statutory grounds for termination of Mother's parental rights, persistence of conditions, mental incompetence, substantial noncompliance with the provisions of the permanency plan, and abandonment by failure to maintain a suitable home. The trial court also found that termination of her rights was in the best interest of the child. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

C. Michael Cardwell, Nashville, Tennessee, for the appellant, Tonya L. R.

Robert E. Cooper, Jr., Attorney General and Reporter, and Martha A. Campbell, Deputy Attorney General, for the Tennessee Department of Children's Services.

Susie Piper McGowan, Nunnelly, Tennessee, Guardian Ad Litem.

## OPINION

Tonya L. R.[1] ("Mother") has a long and troubling history with the Department of Children's Services. The child at issue in this action, Kayleigh N.R., is Mother's seventh child yet none of Mother's six children are in her care. Mother voluntarily surrendered her parental rights to two children, her parental rights were terminated to two other children, and

---

[1]This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

her other two children reside with other family members. At the time of the termination hearing on Kayleigh, Mother was pregnant with her eighth child.

Kayleigh went into the custody of the Department of Children's Services ("the Department") directly from the hospital on March 24, 2010, three days after birth. She was adjudicated dependent and neglected on August 11, 2010, due to Mother's failure to comply with her mental health treatment. Following entry into Department custody, a Child and Family Team Meeting was held. At the meeting, a permanency plan was developed.

The requirements under the plan were for Mother to maintain stable housing, ensure that there were no environmental concerns, ensure that Kayleigh would not be placed at risk of harm by other residents of her home, obtain an updated psychological assessment, obtain an updated parenting assessment with a mental health component, continue therapy and medication management and provide documentation of this to the Department, and attend Kayleigh's doctor's appointments and follow all recommendations.[2] While Mother did not sign the permanency plan, she did sign the criteria for termination of parental rights, which outlines the statutory grounds for which a parent's parental rights may be terminated.

The permanency plan was approved by the juvenile court on May 21, 2010; however, on the same date, the court excused the Department of its obligation to make reasonable efforts towards reunification. A second permanency plan was subsequently approved by the court. The only change to the permanency plan was the goal, under the new plan the goal was adoption, not reunification.

On January 21, 2011, the Department filed a Petition to terminate Mother's parental rights on the grounds of abandonment by failure to establish a suitable home, substantial noncompliance with the permanency plan, persistent conditions, and mental incompetence.[3]

The case was tried on one day, October 19, 2011. The principle witnesses were the Department caseworker, Latoya Nance, Kayleigh's foster mother, and Mother. Ms. Nance detailed Mother's extensive history with the Department and her ongoing struggles with her mental health. She stated that at the time Kayleigh went in the Department's custody Mother was residing in a home with several other people including her then significant other and her brother who had sexually abused her when she was a child. Ms. Nance testified that when she visited this residence she quickly concluded that it was unsuitable for a child. Several

---

[2]An additional requirement was that Mother pay child support if ordered by the court. No support order was ever entered.

[3]The petition also sought to terminate the parental rights of Kayleigh's father. The trial court terminated Father's parental rights and he did not appeal. Thus, we shall not address him in this appeal.

dogs were in the home, there was dog feces in the home, and the front yard was littered with broken bottles and cigarette butts. She also stated that the house was condemned by the city in June of 2010, but Mother continued to reside there for five more months. After leaving that residence, Mother resided in the home of another friend, but avoided Ms. Nance's attempts to visit the residence. Ms. Nance testified that she lost contact with Mother from October 2010 to January 2011. At the time of the termination hearing, Mother was residing in a one-bedroom apartment with her boyfriend, who had a history with the Department. Ms. Nance stated that the apartment was untidy, she saw roaches there, and the apartment was not appropriate housing for a child.

Evidence was also introduced concerning Mother's long standing and significant mental health problems. In one of her mental health assessments, Mother was diagnosed with bipolar disorder, depression, post traumatic stress disorder, and a personality disorder. In August of 2010, Mother underwent another assessment and she was also diagnosed with major depressive disorder.

Mother testified that she regularly attended therapy and medication management sessions, however, the medical records reported that she had only seen a therapist three times and a psychiatrist five times since June of 2009, a period of more than two years. The mental health records also revealed that Mother was not consistent with taking her medication and there were periods of several months where she was not taking any of her medication. Mother had also failed to provide documentation of her treatment to the Department as required by the permanency plan.

The foster mother of Kayleigh testified at the trial that Kayleigh was doing extremely well in her family's care and that they have another child, with whom Kayleigh has bonded. The foster mother stated that Mother sporadically provided items for Kayleigh but provided no significant support and did not attend any of the child's doctor's appointments. The foster mother also testified that she and her husband wanted to adopt Kayleigh.

On November 21, 2011, the trial court entered its order terminating Mother's parental rights. The trial court specifically found that Mother was not a credible witness especially regarding her compliance with her medical treatment. The trial court also found that the evidence demonstrated that Mother was not honest with her mental health providers, which caused great concern for the reliability of her treatment. The trial court found that Mother had failed to maintain a suitable home and that Mother "continued to act in ways that would pose a substantial threat of harm if Kayleigh  were returned to her."  The trial court found that Mother's parental rights should be terminated on the grounds of persistence of conditions, mental incompetence, substantial noncompliance with the provisions of the permanency plan,

and abandonment by failure to maintain a suitable home, as well as the finding that termination of her rights was in the best interest of the child. Mother filed a timely appeal.

## ANALYSIS

Mother contends the evidence was insufficient to establish any ground for termination based upon the clear and convincing burden of proof. She also contends the Department did not clearly and convincingly prove that termination of her parental rights was in the best interest of Kayleigh.

### I.

Parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). The petitioner has the burden of proving that there exists a statutory ground for termination. *See* Tenn. Code Ann. § 36-1-113(c)(1); *Jones*, 92 S.W.3d at 838. Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). Additionally, the petitioner must prove that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R.*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re A.W.*, 114 S.W. 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000). Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed de novo with no presumption of correctness. *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008) (no Tenn. R. App. P. 11 application filed) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)).

### II.

The trial court found four statutory grounds upon which Mother's parental rights may be terminated. As the guardian ad litem noted in her brief, the facts supporting the findings of four grounds upon which Mother's parental rights may be terminated are so intertwined it is difficult to separate them, but we shall try.

The first ground is persistent conditions pursuant to Tennessee Code Annotated § 36-1-113(g)(3)(A), which permits a parent's parental rights to be terminated upon a showing that the child has been removed from the parent for a period of six months; the conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and would prevent the child's safe return to the care of the parent still persist; there is little likelihood that these conditions will be remedied at an early date so that the child can safely be returned in the near future; and the

continuation of the parent and child relationship greatly diminishes the child's chance of early integration into a safe, stable, and permanent home.

The second ground found by the trial court upon which Mother's parental rights may be terminated is the ground of mental incompetence set forth at Tennessee Code Annotated § 36-1-113(g)(8). A parent's parental rights may be terminated under this ground if the trial court determines by clear and convincing evidence that "the parent . . . is incompetent to adequately provide for the further care and supervision of the child because the parent's . . . mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent . . . will be able to assume or resume the care of and responsibility for the child in the near future." Tenn. Code Ann. § 36-1-113(g)(8)(B)(i).

The third ground found by the trial court is abandonment by failure to provide a suitable home as set forth in Tennessee Code Annotated § 36-1-102(1)(A). Under the statute, if the child has been removed from the home as a result of a petition in which the child was found to be dependent and neglected, the Department made reasonable efforts or the circumstances of the child's situation prevented reasonable efforts from being made prior to the child removal, and the parent has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date, then the parent's parental rights may be terminated. Tenn. Code Ann. § 36-1-102(1)(A). The relevant period of time in this action for this ground was March 21, 2010 until July 21, 2010.

The fourth ground is failure to substantially comply with the obligations of the permanency plan as set forth in Tennessee Code Annotated § 36-1-113(g)(2). In order to terminate upon this ground, the trial court must determine that the requirements were reasonable and related to remedying the conditions which necessitated the child's placement in foster care. *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002). The trial court must also determine that the parent's noncompliance with the requirements of the permanency plan was substantial. *In re M.J.B.*, 140 S.W. 3d 643, 656 (Tenn. Ct. App. 2004).

Having reviewed the entire record, we have concluded that the evidence presented to the trial court clearly and convincingly proves each of the four grounds found by the trial court upon which Mother's parental rights may be terminated. The evidence clearly demonstrates that from the time the child was placed into the Department's custody until the time of the termination hearing, Mother failed to make any significant changes that would make her capable of caring for the child, and she failed to maintain a suitable home for the child. The evidence is replete with instances of Mother's poor decision-making, especially in regards to the persons with whom she chose to reside, a concern that in part necessitated the child's placement into the Department's custody. Further, Mother failed to comply with

the requirements of her permanency plan most notably the requirements related to the treatment for her mental health problems. Although Mother managed to complete a mental health assessment and a parenting assessment, she failed to comply with the recommendations of her treatment plan by continuously attending counseling and maintaining her medication.

It is also significant that the trial court found Mother was not credible. As the court observed, she told conflicting stories to the court and to the mental health professionals whom she sporadically saw, a fact demonstrated by her medical records. The trial court was concerned that Mother's lack of honesty would prevent her from obtaining the help that she clearly needs, a concern that this court shares. Mother's long history of substantial mental health problems was a main reason that the child was placed into the care of the Department, and Mother's failure to make any substantial efforts to address her mental health problems supports the trial court's findings. We, therefore, affirm the trial court as to all four statutory grounds for termination.

III.

Once the court determines there is at least one ground for termination, the court must conduct a best interest analysis using the statutory factors set forth at Tennessee Code Annotated § 36-1-113(i)(1)-(9). The statutory factors are not exclusive or exhaustive and other factors may be considered by the court. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Mother failed to make a significant adjustment in her circumstances, conduct, or conditions as to make it in Kayleigh's best interest to return home in the foreseeable future. While Mother had some visitation with Kayleigh, no significant relationship exists between Mother and Kayleigh. In contrast, Kayleigh is doing well in her foster home and her foster family wishes to adopt her and provide the stability Mother was unable to provide. The best interest analysis is to be determined from the perspective of the child rather than the parent, and it is clear that from Kayleigh's perspective it is in her best interest for Mother's parental rights to be terminated. *See State of Tenn., Dep't of Children's Serv. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to Mother's indigency.

_____
FRANK G. CLEMENT, JR., JUDGE